**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SIMON WRECKING COMPANY, INC., | : | |
| SIMON RESOURCES, INC., and | : | |
| MID-STATE TRADING COMPANY, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 03-CV-3231 |
| | : | |
| AIU INSURANCE COMPANY, | : | |
| CONTINENTAL CASUALTY COMPANY, | : | |
| TRANSPORTATION INSURANCE COMPANY, | : | |
| and | : | |
| LIBERTY MUTUAL INSURANCE COMPANY | : | |
| | : | |
| Defendants. | : | |

March 10, 2008                                                        Anita B. Brody,   J.

**MEMORANDUM AND ORDER**

**I.  INTRODUCTION**

Plaintiffs Simon Wrecking, Inc., Simon Resources, Inc., and Mid-State Trading Company

(collectively referred to as "Simon") brought this suit against their insurers, Defendants

Transportation Insurance Company and Continental Casualty Company (collectively referred to

as "Continental").  Simon brought three counts against Continental.  Count I sought a declaration

that Continental owed a duty to defend and indemnify Simon.  Count II sought damages for

Continental's alleged breach of contract based on its failure to defend and indemnify Simon.

Count III sought damages pursuant to Pennsylvania's bad faith statute.

Both parties filed motions for summary judgment. On January 10, 2008, I issued a

Memorandum and Order addressing these summary judgment motions.  In my opinion, I

1

dismissed Simon's bad faith claim (Count III) and I allowed Simon to move forward on Counts I

and II, but solely based on the theory of regulatory estoppel.  In doing so, I set forth the following

elements of regulatory estoppel: (1) A party made a statement to a regulatory agency; (2) The

regulatory agency relied upon that statement when deciding the issue presented by the party; and

(3) Afterward, the party took a position opposite to the one presented to the regulatory agency.

On January 24, 2008, Simon filed a motion for reconsideration seeking a ruling to

eliminate the second element of regulatory estoppel, requiring proof of a regulatory agency's

reliance upon the statement made by a party.  For the reasons stated below, I grant Simon's

motion for reconsideration.

## II.  LEGAL STANDARD

According to the Third Circuit, "[t]he purpose of a motion for reconsideration is to correct

manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v.

Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  In order to prevail on a motion for reconsideration, a

party seeking reconsideration must demonstrate one of the following: "(1) an intervening change

in the controlling law; (2) the availability of new evidence that was not available when the court

granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or

to prevent a manifest injustice."  *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d

669, 677 (3d Cir. 1999).  This ruling falls within the third prong - to correct a clear error of law.

## III.  DISCUSSION

Simon argues that this Court committed a clear error of law when it held that one of the

elements required to prove regulatory estoppel is proof of reliance by the regulatory agency.  The

Supreme Court of Pennsylvania first acknowledged that regulatory estoppel was a valid legal

theory upon which a party could seek recovery in *Sunbeam Corp. v. Liberty Mutual Insurance Company*, 781 A.2d 1189 (Pa. 2001). In *Sunbeam*, the Pennsylvania Supreme Court stated that regulatory estoppel is "a form of judicial estoppel." *Id*. at 1192. The *Sunbeam* Court relied on its definition of judicial estoppel to interpret the insured's regulatory estoppel claim. In its opinion, the *Sunbeam* Court stated:

> Judicial Estoppel is an equitable, judicially created doctrine designed to protect the integrity of the courts by preventing litigants from "playing fast and loose" with the judicial system by adopting whatever position suits the moment. Unlike collateral estoppel or res judicata, it does not depend on relationships between parties, but rather on the relationship of one party to one or more tribunals.

*Id*. Based on its definition of judicial estoppel, the *Sunbeam* Court concluded that regulatory estoppel "[i]n essence . . . prohibits parties from switching legal positions to suit their own ends." *Id*. The *Sunbeam* Court never laid out the elements of regulatory estoppel. It stated, however, that "even without pleading or proving reliance by the insurance department, the allegation of estoppel should not have been dismissed." *Id*.

Because the *Sunbeam* Court depended upon the theory of judicial estoppel to define regulatory estoppel, the natural place to look to resolve whether reliance is a required element of regulatory estoppel is in other opinions of the Supreme Court of Pennsylvania that interpret the meaning of judicial estoppel. None of the Supreme Court of Pennsylvania's most recent cases interpreting the doctrine of judicial estoppel require proof of a court's reliance on the statements made to it. *See In re Adoption of S.A.J.*, 838 A.2d 616 (Pa. 2003); *In re Estate of Bullotta*, 838 A.2d 594 (Pa. 2003); *Trowbridge v. Scranton Artificial Limb Co.*, 747 A.2d 862, 864 (Pa. 2000). Rather, the Supreme Court of Pennsylvania has determined that "[a]s a general rule, a party to an action is [judicially] estopped from assuming a position inconsistent with his or her assertion in a

3

previous action, if his or her contention was successfully maintained." *See Trowbridge v. Scranton Artificial Limb Co.*, 747 A.2d 862, 864 (Pa. 2000). To have a contention "successfully maintained" a party must make a statement to a court and receive a favorable result. *See S.A.J.*, 838 A.2d 617-20.

Although "successfully maintained" is generally a prerequisite in judicial estoppel, "[w]hether successful maintenance of the prior inconsistent position of litigant is strictly necessary to implicate judicial estoppel in every case, or whether success should instead be treated as a factor favoring the doctrine's application, is the subject of some uncertainty." *Id*. at 620, n.3. In *S.A.J.*, the Supreme Court of Pennsylvania noted that its decision in *Sunbeam* might support a broader application of the doctrine of judicial estoppel. *Id*. However, the *S.A.J.* Court felt it did not need to conclude whether "successfully maintained" was an absolute prerequisite to judicial estoppel because the party had prevailed in the earlier proceedings. *Id*.

Similar to *S.A.J.*, I do not need to determine whether "successfully maintained" is a prerequisite to judicial estoppel because in this case it is clear that whether or not Continental made a statement to the Pennsylvania Insurance Department regarding passage of the pollution exclusion, it was a prevailing party because the Pennsylvania Insurance Department adopted the pollution exclusion. Hence, Continental "successfully maintained" its contention.

Regardless of whether "successfully maintained" is a prerequisite of judicial estoppel, reliance is not a required element of judicial estoppel.[1] Additionally, reliance is not a required

---

[1] Although reliance is unnecessary to prove that a party "successfully maintained" its contention in the previous court action, the fact that a party received a favorable ruling by the court would tend to indicate that the court relied upon that party's statement. For plaintiffs the burden of proving that a party "successfully maintained" its contention is more concrete and less burdensome than proving reliance by the court.

element of regulatory estoppel.  This point has been made clear in *S.A.J.*, in which the Supreme

Court of Pennsylvania explained that in *Sunbeam* it found that "regulatory estoppel (a form of

judicial estoppel) was applicable whether or not the Pennsylvania Insurance Department relied

upon the insurance company's prior inconsistent position."  *Id.*

Although reliance is not a required element of regulatory estoppel, the Supreme Court of

Pennsylvania has repeatedly asserted that judicial estoppel was designed to prevent courts from

playing "fast and loose" with the judicial system.  *See S.A.J.*, 838 A.2d 621; *Sunbeam*, 781 A.2d

1192; *Trowbridge*, 747 A.2d 865.  The Supreme Court of Pennsylvania adopted this principle of

playing "fast and loose" from the federal courts.  *Trowbridge*, 747 A.2d 865 ("Federal courts have

long applied this principle of estoppel where litigants 'play fast and loose' with the courts by

switching legal positions to suit their own ends." (quoting *Ligon v. Middletown Area Sch. Dist.*,

584 A.2d 376, 380 (Pa. Cmwlth. 1996)).

Because the phrase playing "fast and loose" seems to be derived from the federal courts, I

look to the Third Circuit for guidance on its meaning.  According to the Third Circuit, playing

"fast and loose" with the courts may require proof that a party changed its position in bad faith.

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d

Cir. 2003).  This interpretation of playing "fast and loose" indicates that regulatory estoppel may

require more than proof that a party made one statement to a regulatory agency and then took an

opposite position.

Based on the decisions of the Supreme Court of Pennsylvania, I hold that reliance is not a

required element of regulatory estoppel.  In reconsidering the standard for regulatory estoppel, I

recognize that proof that a party  "successfully maintained" its contention may be a prerequisite.

However, as previously stated, whether this is required is not an issue here.  I find that in this case a plaintiff must set forth two elements to prove regulatory estoppel: (1) A party made a statement to a regulatory agency; and (2) Afterward, the party took a position opposite to the one presented to the regulatory agency.  Additionally, at trial, a plaintiff may need to show that the party taking an opposite position possessed some requisite level of culpability.

**ORDER**


      **AND NOW**, this \_\_\_10th \_\_\_ day of March 2008, it is **ORDERED** that Plaintiffs' Motion

for Reconsideration (Doc. #235) is **GRANTED**.


                    s/Anita B. Brody


                    _____

                    ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to: